UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN and COUNTRY CREDIT CORP.<br>Plaintiff<br><br>v.<br><br>BARRY MILLER, Defendant<br><br>&<br><br>MARY MILLER<br>a/k/a MARY HAYNE-MILLER a/k/a<br>MARY HAYNE, Defendant<br><br>&<br><br>MARK G. DEGIACOMO, CHAPTER 7<br>BANKRUPTCY TRUSTEE of the ESTATE<br>OF BARRY MILLER, MARY MILLER<br>a/k/a MARY HAYNE-MILLER a/ka/<br>MARY HAYNE,  Defendant<br><br>&<br><br>Et al[1], Defendants | Civil Action No.<br><br>**05  11223 RWZ**<br><br>RECEIPT # _____<br>AMOUNT $ _____<br>SUMMONS ISSUED _____<br>LOCAL RULE 4.1 _____<br>WAIVER FORM _____<br>MCF ISSUED _____<br>BY DPTY. CLK. _____<br>DATE _____<br><br>MAGISTRATE JUDGE _____ |

### VERIFIED COMPLAINT

NOW COMES Town and Country Credit Corp., (hereinafter referred to as "the Plaintiff"), by and through their Attorneys, Ablitt & Caruolo, P.C., and hereby complains against the defendants as follows:

#### I.   JURISDICITION & VENUE

1.   This Court has jurisdiction over this matter and the parties pursuant to 28 U.S.C. §§ 1332 and 1334. The

---

[1] Keene & Gizzi, Attorneys at Law, Peter Gizzi, Esq. as Agent for Old Republic National Title Insurance Company, Washington Mutual Bank, F.A., Ocwen Federal Savings Bank and Salem Five Cents Savings Bank.

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different states.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, 1408 and 1409 as the claims herein relate to real property within the Commonwealth of Massachusetts and arise under a pending bankruptcy case in the United States Bankruptcy Court for the Eastern District of Massachusetts.

## II.   PARTIES

3. The Plaintiff is a Delaware corporation engaged in the business of mortgage lending with a principal place of business at 2010 Main Street, Suite 800, Irvine, California, 92614.

4. Upon information and belief, the Defendant, Barry Miller (hereinafter "Miller") is a U.S. citizen who resides at 36 Beach Avenue, Swampscott, Massachusetts 01907.

5. Upon information and belief, the Defendant, Mary Miller (hereinafter "Miller-Hayne") is a U.S. citizen who resides at 36 Beach Avenue, Swampscott, Massachusetts 01907[2].

6. The Defendant, Mark G. DeGiacomo, Esq. (hereinafter "the Trustee") is the Chapter 7 Bankruptcy

---

[2] Defendant Miller and Miller-Hayne hereinafter are collectively referred to as "the Debtors".

2

Trustee of the Estate of the Debtors (03-16731-JNF) whose
business address is Murtha Cullina, L.L.P., 99 High Street,
Boston, Massachusetts, 02110.

7.    Upon information and belief, the Defendant, Keene
& Gizzi is a law firm with a principal place of business at
220 Broadway Suite 402 Lynnfield MA 01940.

8.    Upon information and belief, the Defendant, Peter
Gizi,   Esq.   (hereinafter   "the   Title   Agent")   is   a
Massachusetts attorney, is a partner of Keene & Gizzi, is a
U.S. citizen and is a duly authorized title insurance agent
for Old Republic National Title Insurance Company[3].

9.    Upon information and belief, Washington Mutual,
F.A. is a national mortgage lender with a principal place
of business at 1201 3rd Avenue, Seattle, Washington, 98101.

10.   Upon   information   and   belief,   Ocwen   Federal
Savings Bank is a national mortgage lender with a principal
place of business 12650 Ingenuity Drive, Orlando, Florida,
32826.

_____

[3] Old Republic National Title Insurance Company's business address is,
upon information and belief, 400 Second Avenue South, Minneapolis,
Minnesota, 55401.

3

11. Upon information and belief, the Defendant, Salem Five Cents Savings Bank is a Massachusetts bank with a principal place of business at 210 Essex Street, Salem, Massachusetts, 01970.

### III. FACTS

12. On August 8, 2003, the Debtors filed a chapter 7 bankruptcy petition in the Eastern Division of the United States Bankruptcy Court for the District of Massachusetts (03-16731-JNF).

12. On March 8, 2004, the Debtors' bankruptcy case was closed. See Docket (03-16731-JNF) at Document No. 25.

13. On March 10, 2004, the Debtors filed a Motion to Avoid certain Judicial Liens (See Docket at Document No. 28) and on March 15, 2004, the case was re-opened (See Docket at Document No. 29), the Debtors' Motion was allowed on April 19, 2004 (See Docket at Document No. 33) and the case was again closed on May 14, 2004 (See Docket at Document No. 35).

14. On August 19, 2004, the Trustee filed a Motion to re-open the case for the second time (See Docket at Document No. 37) and the Bankruptcy Court allowed the

Trustee's motion on August 23, 2004 (See Docket at Document No. 39)[4].

15. On November 11, 2004, the Debtors re-financed[5] their Property and granted a mortgage to the Plaintiff secured by the Debtors' primary residence at 36 Beach Avenue, Swampscott, Massachusetts (hereinafter "the Property"). Attorney Peter Gizzi conducted the closing and issued a title insurance policy for the Property. Copies of the mortgage and title policy are attached hereto as *Exhibit A* and *Exhibit B* respectively.

16. In connection with the execution of the mortgage, the Debtors executed several closing documents, one of which was a Title Affidavit that affirmatively stated, *inter alia*, that the Debtors were the legal owners of the Property and that they had not filed for bankruptcy. See *Exhibit C* attached hereto.

17. Contemporaneous with the execution of the mortgage, the Debtors executed a Promissory Note in favor of the Plaintiff, in the principal amount of $300,000.

---

[4] The Trustee re-opened the case and successfully initiated an Adversary Proceeding against the Debtors, objecting to their discharge under 11 U.S.C. § 727, which resulted in a Stipulation Revoking Discharge. See AP Docket No. 05-1028-JNF at Document No. 5.
[5] In addition to inducing the Plaintiff to pay off most, if not all of the Debtors' debt, the Debtors also received a cash-out payment of $53,315.

18.    The Plaintiff, in justifiable reliance upon the representations of the Debtors and the Title Agent, paid several, substantial and valid debts of the Debtors, including, but not limited to the following[6]:

| Creditor | Interest | Amount |
|----------|----------|--------|
| Washington Mutual, F.A. | Mortgage | $111,312 |
| Ocwen Federal Savings | Mortgage | $52,773 |
| Salem Five Cents Bank | Mortgage | $32,500 |

19.    Prior to the November 11, 2004 closing, the Plaintiff had no knowledge of the Debtors' pending bankruptcy case.

20.    On or about March 16, 2005, the Trustee filed a Motion to Sell the Property by way of Public Auction on April 28, 2005. See Docket at Document No. 80. The Trustee's position is that the Plaintiff's mortgage is void.

21.    When the Plaintiff's counsel learned of the impending Trustee sale, he immediately contacted the Trustee and requested that the Trustee continue the April 28, 2005 sale so that the Bankruptcy Court could determine the Plaintiff's rights, vis-à-vis, its mortgage and the

---

[6] The Plaintiff also paid $26,349 to the Massachusetts Department of Revenue, a town water/sewer bill of $4,750, several unsecured creditors and a cash-out payment to the Debtors in the amount of $53,315.

bankruptcy estate, by way of a Declaratory Judgment action which the Plaintiff anticipated filing forthwith.

22. The Trustee refused to continue the sale. Accordingly, on April 27, 2005, the Plaintiff filed a Verified Petition to Enjoin the Trustee's Sale, or alternatively, to escrow the sale proceeds pending a judicial determination of the parties' rights in the Property and sale proceeds. See AP Docket No. 05-01318-JNF at Document No. 1.

23. Minutes before the April 28, 2005 sale, the Bankruptcy Court held an emergency hearing on the Plaintiff's Injunction Petition. The Court declined to enjoin the sale but did order that the sale proceeds be held in escrow by the Trustee until the Court determined the parties' rights to said proceeds. See Docket at Document No. 3.

24. On or about May 12, 2005, the Trustee filed an Answer and Counterclaim to the Plaintiff's Petition. See Docket at Document No. 4.

25. Contemporaneous with the filing of this suit, the Plaintiff has served its Notice of Removal, pursuant to 28 U.S.C. §§ 1441 and 1452 and Bankruptcy Rule 9027, upon all of the parties on the attached service list.

IV.  COUNT ONE (1)
AGAINST THE DEBTORS: OBJECTION TO DISCHARGE

26.  The Plaintiff hereby restates and incorporates by reference paragraphs one (1) through twenty-five (25) above as if fully set forth herein.

27.  The Plaintiff hereby objects to either of the Debtors receiving a discharge, pursuant to 11 U.S.C. § 523 (2) and 11 U.S.C. § 727, for any and all debt related to the Plaintiff's Mortgage and Note.

V.  COUNT TWO (2)
AGAINST THE DEBTORS: MORTGAGE FRAUD 18 U.S.C. §§ 1001, 1011 & 1014

28.  The Plaintiff hereby restates and incorporates by reference paragraphs one (1) through twenty-seven (27) above as if fully set forth herein.

29.  The Debtors made false statements of fact to the Plaintiff, or its agent(s), that the Debtors knew to be false in connection with obtaining credit from the Plaintiff.

30.  The Debtors made false statements of fact to the Plaintiff with the intent of inducing the Plaintiff to loan them money.

31.  The Plaintiff justifiably relied upon the Debtors' false statements and as a proximate result thereof, has been damaged thereby.

## VI.   COUNT THREE (3)
### AGAINST ATTORNEY PETER GIZZI as AGENT FOR OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY: NEGLIGENCE

32.   The Plaintiff hereby restates and incorporates by reference paragraphs one (1) through thirty-one (31) above as if fully set forth herein.

33.   Attorney Peter Gizzi, as a title agent for Old Republic National Title Insurance Company, had a duty to the Plaintiff to exercise the degree of skill, care, diligence, knowledge and learning ordinarily possessed and exercised by an average qualified real estate closing attorney within the Commonwealth of Massachusetts.

34.   Attorney Peter Gizzi failed to exercise such degree of skill, care, diligence, knowledge and learning when closing the Debtors' loan, certifying title to the Plaintiff and issuing the Plaintiff a Lender's title insurance policy.

35.   As a proximate cause of the Defendant, Peter Gizzi's negligence, the Plaintiff has been damaged thereby.

## VII. COUNT FOUR (4)
### AGAINST KEENE & GIZZI: VICARIOUS LIABILITY

36.   The Plaintiff hereby restates and incorporates by reference paragraphs one (1) through thirty-five (35) above as if fully set forth herein.

9

37. The Plaintiff, Keene & Gizzi, Attorneys at Law,
as a law partnership, had a duty to the Plaintiff to
exercise the degree of skill, care, diligence, knowledge
and learning ordinarily possessed and exercised by an
average qualified real estate closing attorney within the
Commonwealth of Massachusetts or to adequately supervise
its employees, associates and agents in providing legal
services to the Plaintiff.

38. The Plaintiff, Keene & Gizzi, Attorneys at Law,
failed to exercise such degree of skill, care, diligence,
knowledge and learning in connection with the closing of
the Debtors' loan, when it, by and through Peter Gizzi,
Esq., certified title to the Plaintiff and issued the
Plaintiff a Lender's title insurance policy.

39. As a proximate cause of the Defendant, Keene &
Gizzi, Attorney at Law's negligence, the Plaintiff has been
damaged thereby.

### VIII.COUNT FIVE (5)
### AGAINST THE TRUSTEE: DECLARATORY JUDGMENT

40. The Plaintiff hereby restates and incorporates by
reference paragraphs one (1) through thirty-nine (39) above
as if fully set forth herein.

41. The Trustee has plead, in the Debtors' pending
bankruptcy case (03-16731-JNF) and in the Adversary

10

Proceeding (Injunction) commenced by the Plaintiff (05-01318-JNF) that the Plaintiff's mortgage is void as a violation of the automatic stay under 11 U.S.C. § 362 (a) and is voidable as a Preference under 11 U.S.C. § 549 (a).

42. The Plaintiff has plead and hereby pleads that its Mortgage and Note is a valid, secured debt that cannot be avoided by the Trustee, under the facts and circumstances of this case.

43. Resolution of this controversy is proper before this Court pursuant to 11 U.S.C. § 2201.

44. The Plaintiff hereby reserves the right to seek a Declaratory Judgment in this case within a reasonable time after discovery has been conducted.

### IX.   COUNT SIX (6)
### AGAINST WASHINGTON MUTUAL, F.A., OCWEN FEDERAL SAVINGS BANK and SALEM FIVE CENTS SAVINGS BANK: UNJUST ENRICHMENT & EQUITABLE SUBORDINATION & RESCISSION

45. The Plaintiff hereby restates and incorporates by reference paragraphs one (1) through forty-four (44) above as if fully set forth herein.

46. The Plaintiff paid the Defendants, Washington Mutual, Ocwen Federal Savings Bank and Salem Five Cents Savings Bank, in full from the November 2004 real estate closing.

11

47. The Defendants would not have been paid by the Plaintiff but for the fraud perpetrated against it by the Defendant-Debtors.

48. It is inequitable to allow the Defendants to retain the payoff funds they received from the Plaintiff, under the facts and circumstances of this case.

49. In the event that the Plaintiff's Mortgage and Note are adjudged void or otherwise avoided, the interests of the Defendants, Washington Mutual, Ocwen Federal Savings Bank and Salem Five Cents Savings Bank should be equitably subordinated to the Plaintiff's.

50. In the event that the Plaintiff's Mortgage and Note are adjudged void or otherwise avoided, the Plaintiff has the right to rescind its loan to the Defendant-Debtors and to recoup all of the funds, with interest, which it paid to the Defendants, Washington Mutual, Ocwen Federal Savings Bank and Salem Five Cents Savings Bank by way of right of rescission.

The Plaintiff hereby gives notice that it intends to rely upon and introduce such other and further claims, amendments and defenses that may become apparent through discovery.

## **VERIFICATION**

I, _Teresa He_____, am employed as a(n) _Assistant Manager___ by AMC Mortgage Services which is the authorized servicer for the above-referenced Plaintiff, Town and Country Credit Corporation. I have personal knowledge of the facts and allegations contained within the foregoing document and hereby swear under the pains and penalties of perjury that they are true, accurate and complete, to the best of my knowledge.

DATED:  _6·4·05_                           By: _____

## **THE STATE OF CALIFORNIA**

, ss

THEN Personally appeared before me, _Terisa Hoo___ , in his/her capacity as a(n) _Assist Manager_ at AMC Mortgage Services, Inc. and upon being duly deposed and sworn, attested that the foregoing Declaration is true, accurate and complete.



DATED:

IMELDA BARRAGAN
COMM. #1335914
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Jan. 19, 2006

Notary Public

My Commission Expires: _1-19 06_

WHEREFORE, the Plaintiff respectfully requests that this Court:

A. Revoke the Debtors' Bankruptcy Discharge, pursuant to 11 U.S.C. §§ 727 AND 523, for any and all debts incurred in connection with the November 11, 2004 Note and Mortgage; and,

B. Find the Debtors guilty and/or liable of mortgage fraud pursuant to 18 U.S.C. §§ 1001, 1011 and 1014,

13

C. Fine the Debtors, pursuant to 18 U.S.C. §§ 1001, 1011 and 1014, for any and all fees and costs incurred by the Plaintiff as a proximate cause of the Debtors' material misrepresentations and material omissions; and,

D. Find the Defendant, Peter Gizzi, jointly and severally liable for his negligent issuance of the Old Republic Title Insurance policy to the Plaintiff; and,

E. Find the Defendant, Old Republic National Title Insurance Company, jointly and severally liable for its imputed and contractual liability to the Plaintiff in connection with the Old Republic Title Insurance policy it issued to the Plaintiff; and

F. Find the Defendant, Keene & Gizzi, Attorneys at Law, jointly and severally liable for its vicarious liability to the Plaintiff for the acts and omissions of Attorney Peter Gizzi in connection with the Old Republic Title Insurance policy issued to the Plaintiff; and,

G. Find that the interests of the Defendants, Washington Mutual F.A., Ocwen Federal Savings Bank and Salem Five Cents Savings Bank are junior to the Plaintiff's by operation of Equitable Subrogation; and,

H. Order the Defendants, Washington Mutual F.A., Ocwen Federal Savings Bank and Salem Five Cents Savings Bank to repay the Plaintiff any and all sums, with interest, they

14

received in connection with the November 11, 2004 real estate closing;

I.  Award the Plaintiff its attorney's fees and costs; and,

J.  Grant any other relief that the Court deems Just and Equitable.

<div style="margin-left: 40%;">

Respectfully submitted,
Town and Country Credit
Corp.,
By its Attorneys,

ABLITT & CARUOLO, P.C.

</div>

DATED: 6. 10.05

<div style="margin-left: 40%;">

By: William J. Amann, Esq.
(BBO # 648511)
92 Montvale Avenue, Suite 2950
Stoneham, MA 02180
781-246-8995

</div>

Certified to be true and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____ MA _____

Return To:
**Town and Country Credit
Corp.
2010 Main St., Suite 800,
Irvine, CA 92614**

Prepared By: Town and Country Credit Corp.

**Marleen Anderson
8 New England Executive
Park, Suite 420,Burlington,
MA 01803**

———————————[Space Above This Line For Recording Data]———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated **November 11, 2004** ,
together with all Riders to this document.
(B) "Borrower" is **BARRETT L. MILLER and Mary A. HAYNE**

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is **Town and Country Credit Corp.**

Lender is a **Corporation**
organized and existing under the laws of **Delaware**

**MASSACHUSETTS**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022 1/01
0094872363 - 60172

11/11/2004 7:32:41 AM

**AM6MA** (0401)
Page 1 of 16                              Initials _____
VMP Mortgage Solutions, Inc. (800)521-7291

0000009487236303001311601



Certified t⬤ ⬤e and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____

Lender's address is 2010 Main St., Suite 800  Irvine, CA 92614

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated November 11, 2004
The Note states that Borrower owes Lender three hundred thousand and 00/100

Dollars
(U.S. $ 300,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2034
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

Initials: _____

AM6MA (0401)                          Page 2 of 16                          Form 3022  1/01

0094872363 -60172

11/11/2004 7:32:41





Certified a true and exact copy of the origina.
TOWN & COUNTRY CREDIT CORP.
By_____ MA

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                                        [Type of Recording Jurisdiction]
of ESSEX                                                [Name of Recording Jurisdiction]:
Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 6-244                                   which currently has the address of
36 BEACH AVE.                                                                  [Street]
SWAMPSCOTT                                            [City], Massachusetts 01907         [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials:_____

AM6MA (0101)                          Page 3 of 15                          Form 3022  1/01
0094872363 - 60172
11/11/2004 7:32:41 AM


000000948723630301311603





Certified to be ___ and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____ MA

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay

**AM6MA** (0401)                                    Page 4 of 15                              Initials:_____    **Form 3022  1/01**

0094872363 - 60172

11/11/2004 7:32:41







Certified to b ____ and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____ M A

the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.

0094872363 - 60172

11/11/2004  7:32:41







Certified to ' and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____ MA

Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the

AM6MA (0401)                    Page 8 of 15                    Initials: _____                    Form 3022   1/01

0094872363 - 60172

11/11/2004  7:32:41





Certif... ...e a true and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____ _M A

excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees

AM6MA (0401)                    Page 7 of 15              Initials:_____        Form 3022  1/01

0094872363 - 60172

11/11/2004 7:32:41





Certified to ⬤ te and exact copy of the
TOWN & COUNTRY CREDIT CORP.
By_____ MA

to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Initials: _____

AM6MA (0401)                Page 8 of 16                Form 3022  1/01

0094872363 - 60172

11/11/2004 7:32:41





Certified to be ⁓⁓ and exact copy of the origina
TOWN & COU. ⁓REDIT CORP.
By_____ MA

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a

Initials: _____

AM6MA (0401)                    Page 9 of 16                    Form 3022  1/01

0094872363 -60172

11/11/2004 7:32:41





Certified to be [illegible] and exact copy of the or[illegible]
TOWN & CCL [illegible] CREDIT CORP.
By MK

ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless



Certified t ... true and exact copy of the original
TOWN & ... RY CREDIT CORP.
By_____ M A

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

    **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

    As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

    **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

    **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Initials:_____

AM6MA (0401)                 Page 11 of 15                  Form 3022   1/01

0094872363 - 60172

11/11/2004 7:32:41





Certified to be a true an... exact copy of the original
TOWN & C.       Y CREDIT CORP.
By_____ N/A

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by

0094872363 - 60172

11/11/2004 7:32:41





Certified to    ue and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____ MK

any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

Initials: _____

AM6MA (0401)                    Page 13 of 15                    Form 3022  1/01

0094872363 - 60172

11/11/2004  7:32:41



0000009487236303013111613

●

Certified to be true and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By_____ MA

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          BARRETT MELLER              -Borrower

_____          _____ (Seal)
                                          Mary A. Hayne               -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                     -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                     -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                     -Borrower

AM6MA (0401)                    Page 14 of 15              Form 3022  1/01
0094872363 -60172
11/11/2004 7:32:41 AM



Certified to be a true and exact copy of the original
TOWN & COUNTRY CREDIT CORP.
By _____ MB _____

10/27/2004 14:54 FAX 781 246 3996     KEENS & GIZZI          Ø005



## Exhibit A - Property Description

Closing date:

Borrower(s):        Barrett L. Miller and Mary A. Hayne

Property            36 Beach Avenue, Swampscott, Massachusetts 01907
Address:

The land in said Swampscott with the buildings thereon, situated on 36 Beach Avenue and bounded and
described as follows:

| | |
|---|---|
| NORTHEASTERLY | by Beach Avenue, forty-seven (47) feet; |
| NORTHWESTERLY | by land now or late of Bulfinch, one hundred twenty-six (126) feet; |
| SOUTHWESTERLY | by the well path and by land now or late of Merritt, forty-seven (47) feet; |
| SOUTHWESTERLY | by land now or late of Goldthwait, one hundred twenty-six (126) feet. |

ALSO a strip of land adjoining the above-described premises, bounded and described as follows:

| | |
|---|---|
| NORTHEASTERLY | by the above land, forty-seven (47) feet; |
| NORTHWESTERLY | by Lot 819 on a plan recorded with Essex South District Registry of Deeds, Book 579, Page 263, six (6) feet. |
| SOUTHWESTERLY | by the center line of the well path shown on said plan, forty-seven (47) feet; |
| SOUTHEASTERLY | by land now or late of Orne, six (6) feet. |

Being the same lands and premises conveyed to Barrett L. Miller and Mary A. Hayne by Deed dated
August 17, 1988 and recorded in Deed Book 09659, Page 330.

©1995-2004 Standard Solutions, Inc. 781-324-0699

Certified to ' ___ ue and exact copy of the original
TOWN & C. ____ Y CREDIT CORP.
By_____ MA

COMMONWEALTH OF MASSACHUSETTS,    _____ County ss:

On this_____ \/\/ 2 4 day of _____ ,before me, the undersigned
          Day          Month/Year
notary public, personally appeared

Mary A. Hayne, Bouvett C. Miller

proved to me through satisfactory evidence of identification, which was/were _____
, to be the person(s) whose name(s) is/are signed on the preceding document , and
acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:
(Seal)

0094872363 - 60172

11/11/2004 7:32:41 AM
400-15MA (04/04)                Page 16 of 16        00000094872363030013110615

 

### Commitment To Insure
ALTA Commitment - 1970 Rev.



OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation, herein called the company. for valuable consideration, hereby commits to issue policy or policies of title identified in Schedule A, in favor of the proposed insured named Schedule A, as owner or mortgagee of real estate or interest covered hereby in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor, all subject to the provisions of Schedule A and B and to the Conditions and Stipulations hereof.

This commitment shall be effective only when the identity of the proposed insured and the amount of the policy or policies committed for have been inserted in Schedule A hereof by the Company, either at the time of the issuance of this Commitment or by subsequent endorsement.

This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six (6) months after the effective date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue such policy or policies is not the fault of the Company.

IN WITNESS WHEREOF, Old Republic National Title Company has caused it's corporate name and seal to be hereunto affixed by it's duly authorized officers on the date shown in Schedule A, to be valid when countersigned by a validating officer other authorized signatory.

CONDITIONS AND STIPULATIONS

1. The term "mortgage", when used herein, shall include deed of trust, trust deed or other security instrument.

2. If the proposed insured has or acquires actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company, at it's option, may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions and Stipulations.

3. Liability of the Company under this Commitment shall be only to the named proposed insured and such parties included under the definition of insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate of interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions, exclusions from coverage, and the condition and stipulations of the form of policy or policies committed for in favor of the proposed insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4. Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest or the lien of the insured mortgage covered hereby or any action asserting such claim, shall be restricted to the provisions and condition and stipulations of this Commitment.

IN WITNESS WHEREOF, the Company has caused this Commitment to be signed and sealed, to become valid when countersigned by an authorized officer or agent of the Company, all in accordance with its By-Laws. This Commitment is effective as of the date shown in Schedule A as "Effective Date".

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY
A Stock Company
400 Second Avenue South, Minneapolis, Minnesota 55401

_____

Authorized Signatory

©1986-2004 Standard Solutions, Inc. 781-324-0550    ORT Form 3403NE

11/22/2004 15:56 FAX 781 245 3999    KEENE & GIZZI    ☒002



Commitment
SCHEDULE A





File No.  MILLER, BARRY

1. Effective Date:    October 27, 2004

2. Policy or Policies to be issued:    AMOUNT:

(a)    ___ ALTA OWNER'S POLICY    To Be Determined
   Proposed Insured:
   Barrett L. Miller and Mary A. Hayue

(b)    ✓ ALTA LOAN POLICY    To Be Determined
   Proposed Insured:
   Town & Country Credit Corp.
   ISAOA/ATIMA

(c)    OTHER (Please specify)
   Proposed Insured:

3.    The estate or interest in the land described or referred to in this commitment and covered herein is fee simple and title thereto is at the Effective Date hereof vested in:

   Barrett L. Miller and Mary A. Hayue, by Deed dated August 17, 1988 and recorded in the Essex County Registry of Deeds in Deed Book 09659, Page 421.

4.    The land referred to in this commitment is located at 36 Beach Avenue   in the City/Town of Swampscott, County of Essex, State of  Massachusetts , and is further described as set forth in Exhibit "A" attached hereto and made a part hereof.

SCHEDULE B-SECTION I

The following are the requirements to be complied with:

(1)    Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest to be insured.
(2)    Proper instruments creating the estate or interest to be insured must be validly executed and duly recorded.
(3)    Payment of all taxes, charges, and assessments levied and/or assessed against the subject premises, which are due and payable.
(4)    Additional Requirements:

Payoff and Discharge Existing Mortgage to Dime Real Estate Services Massachusetts Inc. dated August 17, 1988 in the original amount of $148,000.00 and recorded in the Essex County Registry of Deeds in Deed Book 09659, Page 331.

Payoff and Discharge Existing Mortgage to New Century Mortgage Corporation dated September 9, 1998 in the original amount of $64,000.00 and recorded in the Essex County Registry of Deeds on September 14, 1998 at 1:09 in Mortgage Book 15088, Page 474.  This Mortgage was Assigned to Firstar Bank Milwaukee, N.A. as Trustee for the Registered Holders of Salomon Brothers Mortgage Securities VII, Inc., New Century Asset-Backed Floating Rate Certificates, Series 1998-NC7.

Record New Mortgage from Barrett L. Miller and Mary A. Hayue to Town & Country Credit Corp.

INITIAL FOR IDENTIFICATION
Error! AutoText entry not defined.

Old Republic National Title Insurance Company

10/27/2004 14:34 FAX 781 24t .J99          KEENE & GIZZI                                    ☑004

Commitment
SCHEDULE B-SECTION 2



File No. MILLER, BARRY

The policy or policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company.

1.    Rights or claims of parties in possession not shown by the public record.

2.    Discrepancies, conflicts in boundary lines, shortage in area, encroachments, easements, or any other facts which a correct survey would disclose.

3.    Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

4.    Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the Effective Date but prior to the date on which the proposed insured acquires of record for value the estate or interest, or mortgage thereon, covered by this commitment.

5.    Real estate taxes and municipal charges which may constitute a lien.

Parcel Number 6-244.

Real Estate Taxes are not paid to date. The Estimated Annual Taxes are $4,334.44. Taxes are next due on November 1, 2004 in the estimated amount of $799.81. Taxes are paid Quarterly.

Subject to (4) Massachusetts Tax Liens estimated payoff in the amount of $27,177.75 recorded in the following Book and Pages:

1.    Book 17001, Page 354
2.    Book 17001, Page 355
3.    Book 22143, Page 424
4.    Book 22143, Page 425

Subject to 2004 Utility Billing in the estimated amount of $1,299.19.

Subject to 2005 Utility Billing in the estimated amount of $3,314.76.    — verify

Subject to easements and restrictions on record.

INITIAL FOR IDENTIFICATION
©1986-2004 Standard Solutions, Inc. 781-324-0550                    Old Republic National Title Insurance Company



## Exhibit A - Property Description

Closing date:

Borrower(s):          Barrett L. Miller and Mary A. Hayne

Property              36 Beach Avenue, Swampscott, Massachusetts 01907
Address:

The land in said Swampscott with the buildings thereon, situated on 36 Beach Avenue and bounded and described as follows:

**NORTHEASTERLY**    by Beach Avenue, forty-seven (47) feet;

**NORTHWESTERLY**    by land now or late of Bulfinch, one hundred twenty-six (126) feet;

**SOUTHWESTERLY**    by the well path and by land now or late of Merritt, forty-seven (47) feet;

**SOUTHEASTERLY**    by land now or late of Goldthwait, one hundred twenty-six (126) feet.

ALSO a strip of land adjoining the above-described premises, bounded and described as follows:

**NORTHEASTERLY**    by the above land, forty-seven (47) feet;

**NORTHWESTERLY**    by Lot #10 on a plan recorded with Essex South District Registry of Deeds, Book 579, Page 268, six (6) feet.

**SOUTHWESTERLY**    by the center line of the well path shown on said plan, forty-seven (47) feet;

**SOUTHEASTERLY**    by land now or late of Orne, six (6) feet.

Being the same lands and premises conveyed to Barrett L. Miller and Mary A. Hayne by Deed dated August 17, 1988 and recorded in Deed Book 09659, Page 330.

©1986-2004 Standard Solutions, Inc. 781-324-0550

**TITLE AFFIDAVIT** 

Borrower(s): BARRETT MILLER    ary A Hayne

Property Address:  36 BEACH AVE., SWAMPSCOTT, MA 01907

Lender:  Town and Country Credit Corp.

Loan Number:  0094872363

Date:  November 11, 2004

I (we) do solemnly swear that:

1.    I (we) are the only owner(s) of the property above-described (the "Property"), unless otherwise indicated below. No other persons have an ownership interest in the Property. We have owned the Property since _____ and are in sole possession of the Property.  No one has questioned our ownership or right to possession of the Property.  I (we) are of full legal age and are competent to convey or encumber title to the Property.

2.    I (we) now mortgage this Property to:  Town and Country Credit Corp.

The date of the Security Instrument is the same as this Affidavit.  This Security Instrument is given to secure a loan of 300,000.00 .

3.    I (we) confirm that all real estate taxes, special assessments, and charges for improvements such as sewers, sidewalks, curbs or similar improvements benefiting the Property, and water, sewer, and other utility/ fees charged by any governmental entity (including but not limited to municipalities, counties, townships) are current and paid to date and are not yet due and payable.

4.    I (we) confirm that there are no mortgage(s), liens, judgments or other encumbrances on the Property except:
_____ _Salem, wife, OCWen_____
_____Hub.i._____

No other mortgage, lien or encumbrance on the Property has been given, contracted for or agreed to be given or executed by the Borrower(s) to any other person.

5.    No additions, alterations or improvements are now being made or have been made to this Property since _____ .  I (we) have always obtained all necessary permits and Certificates of Occupancy.  No building, addition, extension or alteration on this Property has been made or worked on within the past four months.  There is no dispute with adjoining property owners as to the location of the lot lines for the property.

6.    All labor and material used in the construction of improvements on the Property have been paid for and there are now no unpaid labor or material claims against the improvements of the Property and that all sums of money due for the erection of improvements have been fully paid and satisfied.  We are not aware that anyone has filed or intends to file a mechanic's lien, Notice of Unpaid Balance and Right to File Lien Claim, construction lien or building contract relating to this Property. No one has notified us that any money is due and owing for construction, alterations or repair work to the Property.

7.    Unless noted below, I (we) have not at any time applied for protection under Bankruptcy statutes or any state's creditor's rights laws. (If applicable list all prior bankruptcy filings below.)

8.    I (we) have not violated any covenants, conditions, restrictions, or laws of any nature relating to environmental protection and that there is no notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the above-described property with regards to any Hazardous substance or Environmental law. There has been no presence, use, disposal, storage or release of any Hazardous substance(s) on the above-described property.

9.    Unless noted below, there are no outstanding child support orders or judgments against me (us). (If applicable, list all outstanding child support orders and state whether payments under such are current.)

10.  I (we) have provided the Lender and/or Title Agent/Insurer with a complete, truthful and accurate Statement of Identity.

11.  I (we) agree to subrogate and assign any rights or payments which I (we) may have or receive under any insurance policy which compensates me (us) for a loss and such loss would also cause a loss to the Lender and/or Title Agent/Insurer.

12.  I (we) acknowledge and agree that I (we) will assist and fully cooperate with the Lender and/or Title Agent/Insurer to obtain subordinations of any secondary financing against the Property.

13.  The undersigned borrower(s) (referred to in this paragraph as the "mortgagor" regardless of whether there is one mortgagor or more than one mortgagor) acknowledges that, after execution by the mortgagor of the mortgage or deed of trust securing Lender's mortgage loan (the "Security Instrument") but prior to recordation of such Security Instrument, a legal description will be attached as an exhibit and incorporated into the Security Instrument (the "Legal Description"). The mortgagor authorizes Lender and/or Title Agent/Insurer to attach the Legal Description to the Security Instrument. The mortgagor further acknowledges that the Legal Description may be a truncated or automated legal description that may be in an abbreviated format. The mortgagor authorizes Lender and/or Title Agent/Insurer to amend, correct or modify the Legal Description so that it is identical to the legal description contained in the last document that placed the mortgagor in title to the mortgaged property, without requiring the mortgagor to re-execute or acknowledge the Security Instrument. Additionally, the mortgagor authorizes Lender and/or Title Agent/Insurer to amend, correct or modify the Security Instrument for the limited purposed of ensuring that the Security Instrument is recorded and indexed properly in the county/town records, without requiring the mortgagor to re-execute or acknowledge the Security Instrument.



14.   APPLICABLE FOR REFINANCE TRANSACTIONS ON PROPERTIES LOCATED IN FLORIDA ONLY:

a.   I (We) are refinancing an existing mortgage on the property ("refinanced mortgage") with the same lender or a lender who provides servicing for our existing loan and that I (we) purchased title insurance in connection with the refinanced mortgage insuring me/us and/or the lender and its successors or assigns, which provided survey coverage and did not identify any specific encroachments, overlaps or boundary line issues. To the best of my/our knowledge, all applicable title insurance underwriting requirements were met at the time of the issuance of the policy pertaining to the refinanced mortgage. In the alternative, I (we) are familiar with the property described above and, to the best of my/our knowledge and belief, there are no existing boundary line issues, nor are there any encroachments of the improvements on the property onto adjoining property or into setbacks or easements, nor do any neighboring property improvements encroach onto the property.

b.   To the best of my/our knowledge and belief, there have been no additional improvements made to the above described property since the date of the refinanced mortgage, including, but not limited to, buildings, sheds, fences or swimming pools, nor have there been any alterations to the existing improvements since the date of the refinanced mortgage. We have always obtained all necessary permits and Certificates of Occupancy.

c.   To the best of my/our knowledge and belief, there have been no improvements, including but not limited to, buildings, sheds, fences, or swimming pools, constructed on adjoining property which might encroach onto the above-described property since the date of the refinanced mortgage.

d.   Section 14 of this affidavit is given for the purpose of inducing the Title Agent/Insurer to issue a title insurance policy to a lender without exception for matters that would be reflected on a current and accurate survey of the property.

I (we) hereby acknowledge(s) (1) that this Affidavit of Title is executed under oath for the purpose of inducing the Lender named above to make the Loan and any Title Agent/Insurer providing title insurance thereon, (2) that the Lender will rely upon this Title Affidavit in making the Loan and a Title Agent/Insurer providing title insurance will rely on this Title Affidavit in issuing insurance thereon, (3) the information set out above is true correct and complete, and (4) that I (we) understand that I (we) can be criminally liable for falsely so swearing.

Borrower  BARRETT MILLER                    Date

Borrower  Mary A Hayne                       Date

Borrower                                      Date

Borrower                                      Date

State of _____ )ss.
County of _____ )

On _____, before me, _____
personally appeared _____
personally known to me or proven to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



My Commission Expires: _____

Page 2 of 2

895-2 (5/04)

0000009487236308044202202

JS-44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Town & Country Credit Corp.

**DEFENDANTS**
Barry Miller
Mary Miller
Mark G. Degiacomo

(b) County of Residence of First Listed Plaintiff **Orange**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed **Essex**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Ablitt & Caruolo, P.C.
92 Montvale Ave., Suite 2950
Stonehame, MA 02180

Attorneys (If Known)

05 11223 RWZ

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☒4 | ☒4 |
| Citizen of Another State | ☒2 | ☒2 | Incorporated and Principal Place of Business In Another State | ☒5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

[Nature of suit checkboxes — none marked clearly]

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
☒1 Original Proceeding  ☐2 Removed from State Court  ☐3 Remanded from Appellate Court  ☐4 Reinstated or Reopened  ☐5 Transferred from another district (specify)  ☐6 Multidistrict Litigation  ☐7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 1332, 1334; 18 USC 1001, 1011, 1014; 11 USC 523, 727, 549, 2201

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE Joan N. Feeney Chief Bankruptcy Judge
DOCKET NUMBER 03-16731-JNF  AP 05-01318-JNF

DATE 6.10.05

FOR OFFICE USE ONLY
BTO 648511
RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)
   Town & Country Credit Corp v Miller, Barry & Mary

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER
   SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   _____ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _____ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740,
               790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    * Also complete AO 120 or AO 121
                                                                           for patent, trademark or copyright cases
   __X__ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

   _____ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

   _____ V.    150, 152, 153.          05 11223 RWZ

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)). _____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
                                                          YES ☐    NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC
   INTEREST?  (SEE 28 USC 2403)                          YES ☐    NO ☒
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                          YES ☐    NO ☒

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC
   2284?                                                  YES ☐    NO ☒

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL DIVISION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER
   COUNTY) - (SEE LOCAL RULE 40.1(C)).                    YES ☐    NO ☒
   OR IN THE WESTERN DIVISION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)?(SEE LOCAL RULE 40.1(D)).
                                                          YES ☐    NO ☒

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN DIVISIONS OF THE DISTRICT?
                                                          YES ☐    NO ☒
   (a)     IF YES, IN WHICH DIVISION DOES THE PLAINTIFF RESIDE?_____

9. IN WHICH DIVISION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?_____

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF
    THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL DIVISION;  YES ☐ NO ☐        OR WESTERN DIVISION;    YES ☐    NO ☐

11. ALTERNATIVE DISPUTE RESOLUTION - IS THIS CASE SUITABLE FOR ADR? IF SO, BY WHICH ADR?

    EARLY NEUTRAL EVALUATION  ☒      MEDIATION  ☒      SUMMARY JURY/BENCH TRIAL  ☐

    MINI-TRIAL  ☐                    OTHER  ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME_____William    J.   Amann_____

ADDRESS_____
TELEPHONE NO._____        ABLITT & CARUOLO, P.C.           781  246. 8995
                          92 MONTVALE AVENUE, SUITE 2950
(Category Form.wpd - 3/28/2000)    STONEHAM, MA  02180